**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 21-CR-175-JFH |
| COKER DEAN BARKER, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court are various notices and motions filed by the United States of America ("Government"): (1) a Notice and Motion to Introduce Evidence Under Federal Rule of Evidence 609 [Dkt. No. 97]; (2) a Notice of Intent to Introduce Evidence Under Federal Rule of Evidence 803(6) and 902(11) [Dkt. No. 98]; (3) a Notice and Motion to Introduce Evidence Under Federal Rule of Evidence 404(b) [Dkt. No. 114]; (4) an Opposed Motion to Introduce Evidence of Defendant's Flight to the Mexican Border and Escape from Jail [Dkt. No. 103]; and (5) an Opposed Motion to Introduce William Lozier's State Preliminary Hearing Testimony Under Fed. R. Evid. 804 [Dkt. No. 139]. Defendant has filed a response in opposition to each of the Government's filings. Dkt. Nos. 118, 121, 120, 119, 140. The Court will address each of the Government's filings below in turn.

## BACKGROUND

### I.      Procedural Background

On May 13, 2021, Defendant was indicted on three counts: (1) Murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151, 1153, and 2; (2) Use, Carry, Brandish and Discharge of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2; and (3) Causing the Death of a Person in the Course of a Violation

of Title 18 U.S.C. § 924(c), in violation of 18 U.S.C. § 924(j)(1) and 2.  Dkt. No. 19.  This case is first up on the Court's April 3, 2023 jury trial docket.  *See* Dkt. No. 111.

II.     **Factual Background**

A.  **Charged conduct**

The Indictment charges that on or about April 2, 2019, Defendant murdered Mickel Kelough ("Kelough").  *Id*.  Dkt. No. 19.  On the morning of April 2, 2019, Kelough was found dead inside his car. Dkt. No. 114 at 1.[1]  Kelough's head was wrapped in a garbage bag and he also had a gunshot wound to the head.  *Id*.  Evidence at the scene indicated that Kelough had likely been murdered prior to being placed in his car.  *Id*.  Kelough's probable cause of death was later determined to be "multiple traumatic injuries:  blunt force, asphyxia, and firearm."  *Id*.  Kelough's blunt force injuries included various injuries to his chest, neck, clavicle, hip, back, elbow, wrist, hand, arm, knees, leg, and ankle, as well as multiple fractured ribs, which caused injuries to both his lungs. Dkt. No. 114 at 2.

B.  **Defendant's conduct before and after Kelough's murder**

Kelough's cell phone was recovered at the scene near his car.  *Id*.  Leading up to the time of the murder, several text messages and phone calls were exchanged between Kelough and a contact titled "cooker."  *Id*.

A Government witness states that he spoke with Defendant and Kelough separately the day before the murder and both parties indicated that Kelough owed Defendant money.  *Id*.  The witness also states that Defendant and Anastacia Little ("Little")[2] came to his home shortly after

---

[1]  For purposes of this Order only, the Court accepts the Government's recitations of the facts except where noted to include additions or differences stated in Defendant's briefing.

[2]  Little is Defendant's co-defendant and was Defendant's girlfriend at the time of the charged conduct.  Dkt. No. 19; Dkt. No. 114 at 2.  Little has entered a plea of guilty and is awaiting sentencing.  Dkt. No. 90.

the murder.  During this visit, Defendant confessed to murdering Kelough and told the witness that he was planning to dispose of evidence and leave town.  Dkt. No. 114 at 2-3.  Another Government witness states that Defendant burned several items on the witness' property after the murder.  *Id*. at 2.  Video surveillance of the witness' residence shows Defendant and Little standing near the burn pile.  *Id*. at 3. Several items were later recovered from the burn pile, including remnants of burnt lampshades.  *Id*.

On April 2, 2019, a Facebook account belonging to Little sent a photograph to a Facebook account belonging to "Lacrecia Yelloweyes" via Facebook Messenger.  Dkt. No. 114 at 3.  The photo depicts "a white man lying on the ground with a man of darker complexion on top of him." *Id*.  In the photo, "[t]he white man is wearing white tennis shoes and blue jeans, but no shirt, consistent with how Kelough was dressed when he was found dead in the car."  *Id*.  The location depicted in the photo is consistent with Defendant's residence.  *Id*.

On April 3, 2019, a search warrant was executed on Defendant's residence.  Dkt. No. 114 at 3.  During the search, investigators found that parts of the living room flooring had been ripped up and two living room lamps were missing lampshades.  *Id*.  Blood droplets were found around the house and a bloody folding chair in the home was later determined to match Kelough's DNA profile.  *Id*.  It was also noted that the house smelled like cleaning chemicals or air freshener at the time of the search.  *Id*.

On April 4, 2019, Defendant and Little were apprehended by United States Customs and Border Protection as they attempted to cross the border into Mexico.  Dkt. No. 114 at 3.  Defendant had nearly $5,000 cash with him and stated "that he did not know to which city he was going, but just wanted to get to Mexico."  *Id*. at 4.  Defendant and Little were extradited to Seminole, Oklahoma and charged in state court with Murder in the First Degree.  *Id*.  The state court matter

was later dismissed for lack of jurisdiction following the filing of the federal indictment in this matter on April 9, 2021.  Dkt. No. 103 at 4.

On November 13, 2021, Defendant escaped from the Okmulgee County Jail.  *Id*. Defendant was apprehended by the United States Marshals Service the following day and was charged in a separate federal case related to his escape.  *Id*. at 4-5.

### C.  Defendant's criminal history

Defendant has a criminal history which includes two felony convictions for assault and battery, one felony conviction for preventing a witness from attending court, and one felony conviction for possession of a firearm.[3]  Dkt. No. 97 at 1.  The Government has provided notice that it may offer evidence of these felony convictions under Fed. R. Evid. 609 should Defendant testify at trial.  *Id*.

### D.  Defendant's other conduct

The Government contends that "[o]ne or two weeks before the murder, Scott William Lanham, Little's stepfather, challenged Defendant to a fight because Defendant was boasting about having a Mixed Martial Arts background."  Dkt. No. 114 at 5.  During the fight, Defendant "br[oke] a couple of Lanham's ribs."  *Id*.  Defendant disputes that this fight occurred.  Dkt. No. 120 at 6. The Government further contends that "[a]ccording to Lanham, Defendant and Little also sold marijuana."  Dkt. No. 114 at 5.

### E.  Testimony of William Lozier

When this case was still pending in state court, a preliminary hearing was held on January 23, 2020.  Dkt. No. 139 at 2.  During that preliminary hearing, the State called William Lozier

---

[3]  *See* Seminole County District Court, No. CF-2008-334; Seminole County District Court, No. CF-2010-124; Seminole County District Court, No. CF-2011-124; Seminole County District Court, No. CF-2011-171.

("Lozier"). *Id*. at 1. Lozier lived across the street from Defendant at the time of Kelough's murder and was housed in a nearby cell when Defendant was incarcerated in the Seminole County Jail. *Id*. At the preliminary hearing, Lozier testified regarding various interactions he had with Defendant around the time of Kelough's murder, as well as various written communications he had with Defendant regarding the details of the murder while both were incarcerated. *Id*. at 2. Defendant was present at that hearing and both his counsel and Little's counsel had the opportunity to cross examine him. Dkt. No. 139 at 2.

The Government intends to call Lozier as a witness at trial. *Id*. The Government prepared a trial subpoena for Lozier on February 14, 2023 but has not been able to locate him or serve him with the subpoena. *Id*. According to his attorney and family members, Lozier has not been seen or heard from in months and they do not have a way to contact him. *Id*. at 3; Dkt. No. 139-2 at 2.

## AUTHORITY AND ANALYSIS

### I.   Government's Notice and Motion to Introduce Evidence Under Fed. R. Evid. 609 [Dkt. No. 97]

The Government indicates that, should Defendant testify in his own defense at trial, it intends to impeach him pursuant to Fed. R. Evid. 609 with evidence of his past felony convictions:

   a.  Felony conviction for preventing witness from attending court on July 22, 2009 (5 years with 3 years suspended) with revocation on August 1, 2011 (3-year term) and discharge date of January 18, 20213, in Seminole County District Court.

   b.  Felony conviction for assault and battery on a correctional officer on June 3, 2010 (3 years with 2.5 years suspended) with revocation on August 1, 2011 (2.5 year term) and discharge date of January 18, 2012, in Seminole County District Court.

   c.  Felony conviction for possession of a firearm while being supervised by the Department of Corrections and possession of a sawed off shotgun on September 16, 2011 (6 years with 3 years suspended), in Seminole County District Court.

      d.   Felony conviction for assault and battery by strangulation in the
           presence of a minor child on September 16, 2011 (3-year term),
           in Seminole County District Court.

Dkt. No. 97 at 1-2.

      Evidence of a prior felony conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant."  Fed. R. Evid. 609(a)(1)(B).  However, "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," the probative value must *substantially* outweigh the prejudicial effect and the offering party must give its adverse party reasonable written notice of its intent.  *Id.* at (b).  A "special balancing test" is used for defendant-witnesses because these litigants face "a unique risk of prejudice—i.e., the danger that convictions that would be excluded under Rule 404 will be misused by a jury as propensity evidence despite their introduction solely for impeachment purposes."  *United States v. Smalls*, 752 F.3d 1227, 1240 (10th Cir. 2014) (quoting Fed. R. Evid. 609, advisory committee's notes to the 1990 amendments). This balancing test has five factors:

      (1) the impeachment value of the defendant's prior crimes;

      (2) the dates of the convictions and the defendant's subsequent history;

      (3) the similarity between the past crime and charged crime;

      (4) the importance of the defendant's testimony; and

      (5) the centrality of the defendant's credibility at trial.

*Id.*

      Defendant initially conceded that his felony convictions for possession of a firearm and assault and battery by strangulation in the presence of a minor child are admissible because Defendant was released from confinement on these convictions less than ten years ago.  Dkt. No.

118 at 2. However, Defendant requested that "[g]iven the inflammatory nature of the offenses . . . only the fact of the conviction be admitted." *Id*. In other words, Defendant requested that the Government only be permitted to elicit that Defendant was previously convicted of the felony offenses generally, without specifically stating the name and nature of the offenses. *Id*. at 2-3. Defendant provides no authority for this request only stating that it is made "based upon the original rationale for Rule 609." *Id*. at 2. "The well-settled rule in this circuit is that the permissible scope of cross-examination under Rule 609 extends to the essential facts of convictions, the nature of the crimes, and the punishment." *Smalls*, 752 F.3d at 1240. Therefore, Defendant's request in this regard is denied. To the extent the Court finds the prior convictions are admissible under Fed. R. Evid. 609, the Government will be permitted to elicit the essential facts of the convictions, including the name and nature of the offenses consistent with Tenth Circuit precedent. At the pretrial conference, Defendant argued that all of his prior convictions should be excluded because the prejudicial effect outweighs the probative value. The Court will now turn to an evaluation of Defendant's prior felony convictions under the *Smalls* factors.

## A. Consideration of the *Smalls* factors

### 1. *Impeachment Value*

"In evaluating the first factor, the impeachment value of the defendant's prior crimes, a prior conviction is more likely to be admissible where it involves a crime that bears on defendant's credibility." *United States v. Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *1, *2 (N.D. Okla. June 4, 2021). However, even if a defendant's prior convictions do not involve dishonestly or false statement, a defendant still may be impeached. *Id*. (citing *United States v. Verner*, No. 15-CR-0039-CVE, 2015 WL 1528917, at *8 (N.D. Okla. Apr. 3, 2015), aff'd, 659 F. App'x 461 (10th Cir. 2016) ("[I]t is not necessary for the government to show that the defendant's

prior convictions involve dishonesty or false statements in order to impeach the defendant with the convictions if he testifies at trial."); *United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir. 1977)).

The two assault and battery convictions do not involve characteristics that would go to Defendant's capacity for truthfulness. Crimes of violence, generally, have little impeachment value. *See Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *1, *2 (internal citations omitted). Likewise, the felon in possession of a firearm conviction does not have the impeachment value of a crime involving dishonesty. *See e.g., United States v. Phillips*, 487 F.Supp.3d 1126, 1130 (D.N.M. 2020). Therefore, this factor does not particularly weigh in favor of admitting Defendant's prior convictions for assault and battery or for felon in possession of a firearm.

Defendant's conviction for preventing a witness from attending court, however, does indirectly bear on Defendant's credibility, in that this crime involves action taken by Defendant to prevent others from testifying truthfully, or from testifying altogether. *See* OKLA. STAT. TIT. 21, § 455. Because the elements of the crime do not require proving a dishonest act or false statement on the part of the Defendant, this crime is not automatically admissible under Fed. R. Evid. 609(a)(2). Even so, the Court finds that this crime does bear on Defendant's capacity for truthfulness and, therefore, this factor weighs in favor of admitting Defendant's conviction for preventing a witness from attending court for purposes of impeachment.

2. *Temporal Proximity*

Convictions more than ten years old are presumptively excluded, while convictions within the preceding ten years are considered on a case-by-case basis. *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2. However, the "probative value of an older conviction may remain undiminished if the defendant was recently released from confinement or has multiple intervening

convictions, both of which could suggest his character has not improved." *Id.* (internal citations omitted).

Defendant argues that his convictions for preventing a witness from attending court and for assault and battery on a correctional officer should be excluded because they occurred more than ten years ago. However, at the time the charged crime occurred in 2019, these convictions were not yet ten years old. Additionally, Defendant was revoked on each of these convictions and was subsequently discharged from these felonies within the past ten years. Dkt. No. 97 at 1-2. Additionally, Defendant has picked up another felony charge while in custody for the instant case. Dkt. No. 103 at 4. Therefore, "the apparent length of time that lapsed is less indicative of [D]efendant's rehabilitated character." *See Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2. For these reasons, this factor weighs in favor of admissibility of each of Defendant's prior felony convictions for purposes of impeachment.

### 3. *Similarity*

"The third factor, which compares the similarity of the current charged crime to the prior conviction, weighs against admitting the prior conviction for impeachment if the crimes are similar." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2 (internal citations omitted). "The greater the similarity of the charged crime to the past crime, the higher the likelihood that a jury will be tempted to infer criminal propensity, rather than use the information for its intended purpose–impeachment of credibility." *Id.* (citing *United States v. Caldwell*, 760 F.3d 267, 287 (3d Cir. 2014); *United States v. Chaco*, 801 F. Supp. 2d 1217, 1228 (D.N.M. 2011) ("The caselaw suggests that past felonies are most prejudicial in cases where the felonies are most similar to the crimes charged."); *United States v. Willis*, No. 14-CR-64-JED, 2014 WL 2589475, at *2 (N.D. Okla. June 10, 2014) (same)).

Defendant's prior convictions for felon in possession of a firearm and preventing a witness from attending court are plainly dissimilar to the current charged crime of murder. This factor weighs in favor of admitting Defendant's prior convictions for felon in possession of a firearm and preventing a witness from attending court for purposes of impeachment.

Defendant's prior convictions for assault and battery do, however, have some similarly to the charged crime because they both involve acts of violence. Because there is at least some similarity between the prior convictions and the charged crime, this factor weighs slightly against admission of Defendant's prior convictions for assault and battery.

### 4. *Importance of Testimony*

"In considering the fourth factor, the importance of Defendant's testimony, the Court must determine whether the apprehension of potential impeachment by prior convictions will cause Defendant to abstain from testifying, thus damaging his right to a full defense." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *3 (internal citations omitted). "If the prior conviction is incredibly damaging or prejudicial, that counsels against admitting the prior conviction." *Id*.

Defendant is presently on trial for a violent, gruesome murder. The Court finds that Defendant's prior convictions for felon in possession of a firearm and preventing a witness from attending court are not particularly prejudicial in light of his current alleged offense. This factor weighs in favor of admitting Defendant's prior convictions for felon in possession of a firearm and preventing a witness from attending court for purposes of impeachment.

Defendant's assault and battery convictions, however, may have some prejudicial effect. Specifically, these convictions involve violent acts involving inherently sympathetic parties: a correctional officer and a minor child. Because these convictions are likely to be prejudicial to

Defendant, this factor weighs against admitting Defendant's prior convictions for assault and battery.

### 5. *Centrality of Credibility*

"When evaluating the final factor, the centrality of defendant's credibility at trial, the Court must consider whether defendant's credibility is a material consideration for the jury. Impeachment by prior conviction is not as important if defendant's anticipated testimony will not be central to a jury determination–*e.g.,* if defendant's testimony is corroborated by other sources." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *3. By contrast, "where a case is reduced to a swearing contest between witnesses, the probative value of a conviction is increased." *Id*. (citing *Caldwell*, 760 F.3d at 288).

The Government suggests that it has a number of witnesses and circumstantial evidence implicating Defendant in this crime. Dkt. No. 114. Because of this, it is likely that much of Defendant's defense may be reduced to a "swearing contest between witnesses" and Defendant's credibility is likely to be a deciding factor in this case. This factor weighs in favor of admitting Defendant's prior convictions for purposes of impeachment.

### B. Rule 609(a)(1)(B) Balancing

Following a review of *Smalls* factors, the Court must determine "whether, in light of those factors, the probative value of the evidence outweighs its prejudicial effect." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *4 (citing Fed. R. Evid. 609(a)(1)(B)). After reviewing the *Smalls* factors, the Court finds that the probative value of Defendant's prior conviction for preventing a witness from attending court outweighs any potential prejudicial effect. Specifically, all factors weigh in favor of admissibility. For these reasons, the Court will allow the Government

to introduce evidence of Defendant's prior conviction for preventing a witness from attending court for purposes of impeachment under Fed. R. Evid. 609.

Similarly, the Court finds that after reviewing the *Smalls* factors, the probative value of Defendant's prior conviction for felon in possession of a firearm outweighs any potential prejudicial effect.  The only factor that weighs against admissibility is factor one:  impeachment value.  However, "it is not necessary for the government to show that the defendant's prior convictions involve dishonesty or false statements in order to impeach the defendant with the convictions if he testifies at trial." *Ahaisse*, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *2 (citing *Verner*, No. 15-CR-0039-CVE, 2015 WL 1528917, at *8).  Because all other factors weigh in favor of admissibility, the Court will allow the Government to introduce evidence of Defendant's prior conviction for preventing a witness from attending court for purposes of impeachment under Fed. R. Evid. 609.

Upon review of the *Smalls* factors in regard to Defendant's prior convictions for assault and battery, the Court finds that the probative value does not outweigh the prejudicial effect. Specifically, because the prior convictions and the charged crime share some similarities and because the prior convictions themselves are prejudicial in nature (*i.e.,* violent acts upon a correction officer and in the presence of a minor), the Court finds that the prejudicial effect outweighs the probative value.  This is especially true in light of the fact that the Court will allow the introduction of evidence of Defendant's other prior felony convictions.

For these reasons, the Government's Motion to Introduce Evidence Under Fed. R. Evid. 609 [Dkt. No. 97] is GRANTED in part and DENIED in part.  It is granted in part in that the Court will allow the Government to introduce evidence of Defendant's prior convictions for felon in possession of a firearm and preventing a witness from attending court for purposes of impeachment

under Fed. R. Evid. 609.  It is denied in part in that the Court will not allow the Government to introduce evidence of Defendant's prior convictions for assault and battery.

## II.     Notice of Intent to Introduce Evidence Under Federal Rule of Evidence 803(6) and 902(11) [Dkt. No. 98]

The Government seeks to introduce "Facebook records" and "jail records and calls" from the Webb County, Texas Jail, along with certificates of authenticity and business record affidavits, under Federal Rules of Evidence 803(6) and 902(11).  Dkt. No. 98 at 1-2.  The Government has provided no authority regarding the admissibility of Facebook records or jail calls.  *Id*.  Defendant objects to the admission of Facebook records and jail calls "because the certificates of authenticity [d]o not establish the requisite foundation for admission."  Dkt. No. 121 at 1.

Rule 902(11) of the Federal Rules of Evidence states that a document can be self-authenticating if it "meets the requirements of Rule 803(6)(A)-(C), as shown by the certification of the custodian or another qualified person."  Fed. R. Evid. 902(11).  Rule 803 provides certain exceptions to the rule against hearsay.  *See* Fed. R. Evid. 802-803.  One such exception, the business records exception, "provides that certain records of regularly conducted business activity are admissible for their truth even though they contain hearsay."  *United States v. Blechman*, 657 F.3d 1052, 1065 (10th Cir. 2011) (citing Fed. R. Evid. 803(6)).  To satisfy the business records exception, a record

> must (1) have been prepared in the normal course of business; (2) have been made at or near the time of the events recorded; (3) be based on the personal knowledge of the entrant or of a person who had a business duty to transmit the information to the entrant; and (4) indicate the sources, methods and circumstances by which the record was made were trustworthy.

*Id*.  (quoting *United States v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008)).

Defendant argues that the Facebook records and jail calls do not fall within the business records exception because the records "comprise the communications of various parties and a

photograph taken by some unknown author" and "are the records of the communications between the parties in the records and on the calls." Dkt. No. 121 at 2, 4.  In other words, Defendant argues that the records contain double hearsay in the form of unverified third-party information.

"Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person."  *Blechman*, 657 F.3d at 1065 (citing *United States v. Gwathney*, 465 F.3d 1133, 1141 (10th Cir. 2006)).  "If the person who provides the information is an outsider to the business who is not under a business duty to provide accurate information, then the reliability rationale that underlies the business records exception ordinarily does not apply" and information supplied by the outsider must, instead, fall within its own hearsay exception to be admissible.  *Id.*  (*citing Gwathney*, 465 F.3d at 1141; *Ary*, 518 F.3d at 787; *United States v. Snyder*, 787 F.3d 1429, 1433-34 (10th Cir. 1986)).  The Tenth Circuit has recognized an exception to this general rule and found that information provided by an outsider included in a business record may come in under the business records exception "i[f] the business entity has adequate verification or other assurance of accuracy of the information provided by the outside person."  *Id.* at 1066 (holding that email records from AOL did not fall within the business records exception because AOL did not verify the identity of the person using the email account and explaining that "[r]egistration information is recorded but not verified.  Fictitious names and addresses are common.");  *see also United States v. McIntyre*, 997 F.2d 687, 700 (10th Cir. 1993); *United States v. Cestnik*, 36 F.3d 904, 908 (10th Cir. 1994)).

At the Court's request, the Government provided the Facebook records and jail calls it intends to introduce at trial.  Dkt. Nos. 132, 133.  Upon review of the evidence, the Court notes that the Facebook records consist of posts, messages, and photographs exchanged via Facebook by third-party individuals.  Because the evidence includes information supplied by third-party

individuals, the Facebook records are not admissible under the business records exception unless either (1) the information supplied by a third-party is not hearsay or falls within its own hearsay exception, or (2) Facebook has adequately verified or otherwise assured the accuracy of the information provided by the third-party. *See Blechman*, 657 F.3d at 1067.

The Certificate of Authenticity provided by the Custodian Records for Facebook states that while Facebook keeps record of what information is transmitted on its platform, "the information [is] transmitted by the Facebook user." *See* Bates Nos. 1316-17. Facebook does not indicate that it verifies the identity of the third-party sending or receiving messages. In fact, upon review of the evidence, a message that appears to be sent from Little's Facebook account states "[t]his Coker . . .", indicating that Defendant may have been messaging from Little's Facebook account at that time. *See* Bates No. 1255. Regardless, because Facebook has not verified or otherwise assured the accuracy of the information provided by the third-parties, the Government will be required to demonstrate that any posts, messages, or pictures it intends to introduce from the Facebook records are not hearsay or fall within their own hearsay exception prior to introduction at trial.

Regarding the jail calls, the Business Records Affidavit provided by the Custodian of Records of the Webb County Jail states that the records of the calls were made by Defendant and Little at or near the time the calls were made, that the records of the calls were kept in the course of regularly conducted business, and that the records of the calls were made in the regular practice of the jail. *See* Bates No. 884. While jail calls can certainly be authenticated by business records affidavit, the Court finds that the Business Records Affidavit here is lacking. For example, the Business Records Affidavit does not explain how each inmate must enter a personal identification number prior to making a phone call, how the phone calls are stored by a third party system, or

how the jail calls were collected by searching the third party system for the inmate's personal identification number. *See e.g. United States v. Pebley*, 846 Fed.Appx. 671, 673 (10th Cir. 2021) (unpublished).

For the foregoing reasons, Defendant's objection to the Government's Notice of Intent to Introduce Evidence Under Federal Rule of Evidence 803(6) and 902(11) [Dkt. No. 98] is SUSTAINED. However, to the extent the Government can demonstrate that the Facebook communications are not hearsay or fall within their own hearsay exception, the Court will consider admissibility under those circumstances prior to introduction at trial. Likewise, to the extent the Government can provide additional information to authenticate the jail calls, the Court will take that up at trial.

### III.   Notice and Motion to Introduce Evidence Under Federal Rule of Evidence 404(b) [Dkt. No. 114]

The Government seeks to introduce evidence under Fed. R. Evid. 404(b) of Defendant's "drug business," Defendant's mixed martial arts background, and a fight between Defendant and Scott William Lanham ("Lanham"), Little's stepfather, which occurred a few weeks before the murder and resulted in Defendant breaking "a couple of Lanham's ribs."[4]  Dkt. No. 114 at 5, 9. Defendant objects. Dkt. No. 120.

#### A.  Intrinsic Evidence

The Tenth Circuit has explained, "[w]hen we apply Rule 404(b), we distinguish between evidence that is extrinsic or intrinsic to the charged crime." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (citing *United States v. Pace*, 981 F.2d 1123, 1135 (10th Cir. 1992), *abrogated on other grounds as recognized in United States v. Bell*, 154 F.3d 1205, 1209-10 (10th Cir. 1998)). "Evidence of other acts may be inadmissible under Federal Rule of Evidence 404(b),

---

[4]  Defendant disputes that this fight occurred. Dkt. No. 120 at 6.

but this rule does not cover evidence that is considered 'intrinsic.'" *Id.* (citing *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011)).  Evidence is considered "intrinsic" when it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury" and "extrinsic" when it "is extraneous and is not connected or blended with the factual circumstances of the charged offense." *Id.* (quoting *United States v. Parker,* 553 F.3d 1309, 1314 (10th Cir. 2009)).  The Tenth Circuit considers evidence intrinsic when it is inextricably intertwined with the charged conduct or the evidence is entirely germane background information, directly connected to the factual circumstances of the crime. *Id.* (internal citations and quotations omitted).  Intrinsic evidence "should be approached with caution." *United States v. Collins*, 97 Fed. App'x 818, 824 n.7 (10th Cir. 2004) (unpublished).

The Government first contends that evidence that Defendant sold marijuana is intrinsic to the charged crime in that it "is relevant to explain the text messages between Kelough and [Defendant], show why Defendant was angry at Kelough, and provide contextual and background information to the jury." *Id.* at 9.

Regarding the cellphone evidence, the Government describes it as follows:

> On April 1, 2019 at 1248 hours, a contact named "cooker" texted "yoir pissing me off" after numerous attempts to contact Kelough. Kelough responded "sorry im here now I'll come see you today" at 1634 hours.  At 1819 hours, Kelough sent a message to "cooker" stating "I coming."  Kelough called "cooker" and had a 30-second conversation at 1830 hours.  "Cooker" called and had a seven-minute conversation with Kelough at 1916 hours.

Dkt. No. 114 at 2.  The Government also states that it will introduce evidence that Kelough owed Defendant $600 around the time of the murder.  *Id.*

Approaching intrinsic evidence cautiously, as it must, the Court finds that this evidence does not support the Government's argument that Defendant's "drug business" is intrinsic to the charged crime.  First, the evidence before the Court does not specifically identify Kelough's phone

17

contact "cooker" as belonging to Defendant.  Regardless, the text messages and phone calls

between Kelough and "cooker" do not indicate they were related to Defendant's sale of marijuana.

Additionally, while Kelough may have owed Defendant money, nothing in the evidence shows

that this debt was related to Defendant's sale of marijuana.  Plainly, nothing in the evidence

demonstrates that Defendant's "drug business" is directly connected to the factual circumstances

of the charged conduct and, therefore, Defendant's "drug business" is not intrinsic evidence.  The

Court must next consider the evidence under Rule 404(b).

### B.  Rule 404(b)

Rule 404(b) provides, in pertinent part:

> Evidence of a crime, wrong or other act is not admissible to prove a
> person's character in order to show that on a particular occasion the
> person acted in accordance with the character.
>
> …
>
> This evidence may be admissible for another purpose, such as
> proving motive, opportunity, intent, preparation, plan, knowledge,
> identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).  In weighing the admissibility of evidence under Rule 404(b), the Court must

consider four factors:  (1) whether the evidence is offered for a proper purpose; (2) its relevancy;

(3) whether the probative value of the evidence is substantially outweighed by the prejudicial

effect; and (4) the court must give a limiting instruction if the defendant so requests.  *Huddleston

v. United States*, 485 U.S. 681, 691 (1988); *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir.

2006); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

### i.    *Defendant's "Drug Business"*

The Government argues that even if evidence of Defendant's "drug business" is not

intrinsic, it is still admissible under Rule 404(b) to show motive.  Dkt. No. 114 at 9.  However, the

same issue exists here.  Nothing in the evidence supports the Government's contention that

18

Kelough's murder was related to Defendant's sale of marijuana.   Therefore, although the Government has stated that it offers this evidence to show motive, the Court finds that without any supporting circumstances linking Defendant's sale of marijuana to Kelough's murder, the Government has not offered the evidence for a proper purpose and the Court's 404(b) analysis regarding evidence of Defendant's "drug business" ends here.

       ii.    *Defendant's Mixed Martial Arts Background*

Next, the Government states that it seeks to introduce evidence of Defendant's mixed martial arts background to show Defendant's "intent, knowledge, identity, absence of mistake, and lack of accident" as it relates to Kelough's murder.  Dkt. No. 114 at 5-6.  The Government states that Lanham will testify that Defendant "boast[ed] about having a mixed martial arts background." *Id*. at 5.  The Government argues that this is relevant to show that "Defendant was physically capable of causing the extensive injuries to Kelough given his mixed martial arts background" and that "Defendant's specialized training and skills in mixed martial arts" are relevant "to show Defendant's intent in inflicting the injuries to Kelough, Defendant's knowledge of what his blows could do, and his absence of mistake and lack of accident in killing Kelough." *Id*. at 9.  The Government contends that "[m]ultiple courts have permitted evidence of a defendant's martial arts background." *Id*. at 7.

The Court notes that having a mixed martial arts background is not evidence of a crime, wrong, or other act, and therefore is not excluded under Rule 404(b).  However, the Government will be required to establish its relevancy at trial.

       iii.    *Defendant's Fight with Lanham*

Next, the Government seeks to introduce evidence of the fight between Defendant and Lanham, and Lanham's resulting broken ribs.  Evidence of the fight between Defendant and

Lanham would be admissible under 404(b) only if the fight itself, and not Defendant's character implied by the fight, provided an independent basis for establishing Defendant's intent, knowledge, identity, absence of mistake, or lack of accident as it relates to Kelough's murder. Although a prior act need not be identical, a prior act must be similar to the charged offense to be admissible. *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (internal citation omitted). "This similarity may be shown through physical similarity of the acts or through the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses." *Id*. (internal citations and quotations omitted). "The more similar the act or state of mind is to the charged crime, the more relevant it becomes." *Id*.

Here, there is little similarity between Defendant's fight with Lanham and Kelough's murder. As Defendant points out, "[t]hey involve different people, different circumstances, and different locations." Dkt. No. 120 at 6. Indeed, the evidence suggests that Lanham was the initial aggressor in his fight with Defendant, as Lanham was the one who challenged Defendant to the fight. Dkt. No. 114 at 5. Therefore, Defendant's state of mind during his fight with Lanham would have been vastly different from his state of mind during Kelough's murder, where the Government presumably contends that Defendant was the initial aggressor following Kelough's failure to pay a debt owed to Defendant. *Id*. at 2.

The only similarity between Defendant's fight with Lanham and Kelough's murder appears to be the injury of broken ribs. Kelough's autopsy report indicates that several of his ribs were fractured and Lanham claims that Defendant broke "a couple" of his ribs during their fight. *Id*. at 2, 5. Defendant points out several issues with Lanham's proposed testimony regarding his broken ribs, including lack of foundation, hearsay, speculation, and lay opinion testimony. Dkt. No. 120 at 6. However, the Court need not reach these issues as it finds that evidence of Lanham's broken

ribs is part of the same course of conduct as the fight and, therefore, the Court must consider both the fight and the broken ribs as a whole. Because there is no logical relationship between Defendant's fight with Lanham and Kelough's murder, the Court finds that there is no support for the conclusion that evidence of the fight and, by association, evidence of Lanham's broken ribs, could prove anything other than impermissible character or propensity evidence. In other words, the Government has failed to show that this evidence bears on Defendant's intent, motive, plan, or lack of accident. Therefore, the Government's Opposed Notice and Motion to Introduce Evidence Under Fed. R. Evid. 404(b) is DENIED.

### IV.    Government's Opposed Motion to Introduce Evidence of Defendant's Flight to the Mexican Border and Escape from Jail [Dkt. No. 103]

The Government seeks to introduce evidence of Defendant's flight to Mexico in the days following Kelough's murder, as well as evidence of Defendant's later escape from custody. Dkt. No. 103 at 1. Defendant argues that allowing the flight evidence will have an "undue prejudicial impact on the jury's fact-finding obligation" and "[r]ather than focusing on his alleged conduct for committing the offenses charged, the jury will be unfairly swayed by his conduct after the offense." Dkt. No. 119 at 3.

The Tenth Circuit has long held that evidence of flight and escape from custody can be offered as proof of the consciousness of guilt. *United States v. Martinez*, 681 F.2d 1248, 1256, (10th Cir. 1982) ("It is universally conceded today that the fact of an accused's flight[ and] escape from custody . . . are admissible as evidence of consciousness of guilt, and thus of guilt itself.") (internal citations omitted)). "[F]light evidence carries with it a strong presumption of admissibility." *Id*. It is within the discretion of the trial court to determine whether evidence of flight should be admitted in a particular case. *United States v. Akers*, 215 F.3d 1089, 1102 (10th Cir. 2000) (internal citation omitted). "A court generally will scrutinize the facts of each case to

determine whether the jury should be given an opportunity to draw an inference of guilt from the defendant's flight." *Martinez*, 681 F.2d at 1257.  Timing of the flight, in relation to both the crime and the prosecution of the case, is relevant in determining admissibility.  *Id.* at 1258.  However, "the importance of the immediacy of the flight is diminished if there is [ ] other evidence to indicate that the defendant knew he was sought for the crime." *Id.* (internal citations omitted).  If the court permits the introduction of evidence of flight, a proper limiting instruction is generally warranted. *See United States v. Slater*, 971 F.2d 626, 635-636 (10th Cir. 1992); *Martinez*, 681 F.2d at 1257.

Defendant's flight to Mexico was nearly immediately after Kelough's murder.  Within two days of the murder, Defendant was apprehended by U.S. Customs and Border Protection attempting to cross the border into Mexico.  Dkt. No. 103 at 3.  Defendant had nearly $5,000 cash with him and stated "that he did not know to which city he was going, but just wanted to get to Mexico." *Id.*  Due to the closeness in time to the murder, as well as Defendant's inability to provide a legitimate reason for entering into Mexico, the Court finds that Defendant's flight to the Mexican border is probative of consciousness of guilt.  *See Martinez*, 681 F.2d at 1258 (holding that a flight which occurred "within a matter of days after the crime" was "certainly adequate" for purposes of admissibility).

Defendant's escape from the Okmulgee County Jail is also probative of consciousness of guilt.  Although several years after the actual crime, Defendant's escape came just five (5) months before his trial setting at that time.  Dkt. No. 45.  There is little doubt that Defendant was aware that he was in federal custody and facing imminent prosecution on the instant case at the time of his escape.  Whether his escape was related to his consciousness of guilt or for some other unrelated reason, it is best left to the jury to decide what inference, if any, should be drawn from Defendant's escape.

Therefore, the Government's Opposed Motion to Introduce Evidence of Defendant's Flight to the Mexican Border and Escape from Jail [Dkt. No. 103] is GRANTED and evidence of Defendant's flight to the Mexican border and evidence of his escape from custody may be presented to the jury.  The Court will, however, provide a limiting instruction to the jury regarding its consideration of the flight and escape evidence.

## V.   Government's Opposed Motion to Introduce William Lozier's State Preliminary Hearing Testimony Under Fed. R. Evid. 804 [Dkt. No. 139]

The Government asks the Court to allow it to read Lozier's preliminary hearing testimony to the jury during trial pursuant to Fed. R. Evid. 804.  Dkt. No. 139 at 5.  Defendant objects stating that Lozier's preliminary hearing cross-examination was not sufficient to adequately meet Defendant's trial confrontation rights and that the Government's efforts to locate Lozier fail to establish that he is unavailable.  Dkt. No. 140.

The Federal Rules of Evidence provide:

The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

> (1) Former Testimony.  Testimony that:
>
>> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>>
>> (B) is now offered against a party who had – or, in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1).  This also implicates the Sixth Amendment's Confrontation Clause.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 42 (2004).  The Confrontation Clause bars the "admission of testimonial statements of a witness who did not

appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Id*. at 53-54. Therefore, in order to introduce Lozier's preliminary hearing testimony at trial, the Government must show that Lozier is unavailable and that Defendant had a prior opportunity to cross-examine Lozier. *Id*.

### A. Opportunity to Cross-Examine

Defendant concedes that his counsel was given the opportunity to cross-examine Lozier at the preliminary hearing. Dkt. No. 140 at 5. However, Defendant argues that the cross-examination is insufficient under the Confrontation Clause because (1) his counsel did not have the benefit of all the discovery developed in the three years since the preliminary hearing and (2) the preliminary hearing cross-examination was not as in depth as it would be at trial. *Id*. 5-6. Defendant's arguments fail.

The Supreme Court has recognized that cross-examination of a witness at a preliminary hearing may be sufficient despite the fact that "[a] preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial . . . ." *Barber v. Page*, 390 U.S. 719, 725 (1968); *see also Crawford*, 541 U.S. at 68. Other circuit courts agree. *See Glenn v. Dallman*, 635 F. 1183, 1187 (6th Cir. 1980) (holding that the trial court did not err in admitting the preliminary hearing testimony of an unavailable witness at the defendant's subsequent trial even though the cross-examination conducted at the preliminary hearing "was narrow in scope" and "would have been conducted differently if it has been anticipated that the testimony would be introduced at trial."); *United States ex. rel. Haywood v. Wolff*, 658 F.2d 455, 462 (7th Cir. 1981) (holding that the Supreme Court "has never said that either the opportunity to cross-examine, or the actual cross-examination conducted at the preliminary hearing, must be as full and complete as allowed at trial in order for testimony from such a proceeding to be admissible in the event the

24

witness subsequently becomes unavailable.").  The fact that Defendant lacked some tools which were later developed by the Government or by Defendant himself which would have allowed him a more thorough cross-examination of Lozier does not mean that Defendant lacked the opportunity to cross-examine Defendant.  *See United States v. Hargrove*, 382 F. App'x 765, 779–80 (10th Cir. 2010) (unpublished).

Next, Defendant argues that the testimony violates his confrontation rights because Lozier did not come forward with his statement against Defendant until after he was arrested and charged with his own felony offenses.  Dkt. No. 140 at 6.  The Court notes that while Defendant's counsel did not cross-examine Lozier on this issue at the preliminary hearing, there was certainly an opportunity to do so; in addition, counsel for his Co-Defendant, Little, did so cross-examine Lozier.  *See* Dkt. No. 139-1 at 42-45.  This is sufficient for purposes of confrontation.

Finally, Defendant argues that the preliminary hearing testimony violates his confrontation rights because the state preliminary hearing testimony did not comport with the Federal Rules of Evidence.  Dkt. No. 140 at 4.  In particular, Defendant argues that various portions of Lozier's testimony lack foundation, are speculative, or violate Fed. R. Evid. 404(b).[5]  *Id*. at 4-5.  However, admissibility under the Federal Rules of Evidence is a separate and distinct issue from the Court's analysis under the Confrontation Clause.  In other words, despite a determination that the testimony is permissible under the Confrontation Clause and Fed. R. Evid. 804(b)(1), the testimony must nonetheless comply with the other Federal Rules of Evidence prior to admissibility.

---

[5]  The Court notes that much of the testimony Defendant complains of here was elicited on his cross-examination of Lozier.

### B.  Unavailability

Rule 804 provides that the "[f]ormer [t]estimony" of a witness is not excluded as hearsay "if the declarant is unavailable as a witness." Fed. R. Evid. 804(b)(1).  "The unavailability assessment often turns on the reasonableness of the prosecution's effort to obtain a witness's attendance." *United States v. Nelson*, 801 F. App'x 652, 657 (10th Cir. 2020) (unpublished) (citing *Cook v. McKune*, 323 F.3d 825, 835-36 (10th Cir. 2003)).  While there is no per se rule regarding the prosecution's efforts, the Tenth Circuit has, nonetheless, recognized four factors to consider. *Cook*, 323 F.3d at 835-836.

First, "the more crucial the witness, the greater the effort required to secure his attendance." *Id*.  While the Court agrees that Lozier is likely an important witness for the Government, the pretrial filings in this case indicate that the Government's case will consist of numerous other witnesses and evidence against Defendant.

"Second, the more serious the crime for which the defendant is being tried, the greater the effort the government should put forth to produce the witness at trial."  *Cook*, 323 F.3d at 835-836.  There is no doubt that Defendant is charged with a serious crime.

"Third, where a witness has special reason to favor the prosecution, such as an immunity arrangement in exchange for cooperation, the defendant's interest in confronting the witness is stronger." *Id*.  As noted earlier, counsel for Co-Defendant Little cross-examined Lozier regarding this issue during the preliminary hearing. *See* Dkt. No. 139-1 at 42-45.

"Fourth, a good measure of reasonableness is to require the State to make the same sort of effort to locate and secure the witness for trial that it would have made if it did not have the prior testimony available." *Cook*, 323 F.3d at 835-836.  In other words, the Government should put forth no less effort to locate a witness just because it knows it has preliminary hearing testimony

to fall back on.  Defendant argues that this factor fails because "there are dozens of avenues not explored to locate and secure [Lozier] for his trial testimony."  Dkt. No. 140 at 7.  Defendant further argues that the Government "has made only minimal efforts to locate" Lozier, especially in light of the Government's knowledge of Lozier's "transient nature as early as March of 2022." *Id*. at 8.

The Government prepared a trial subpoena for Lozier on February 14, 2023, in anticipation of his trial testimony beginning April 3, 2023.  Dkt. No. 139 at 2.  The Government's case agent, Matthew Jamerson, requested the help of Deputy Brooks from the Seminole County Sheriff's Office in locating Lozier.  Dkt. No. 139-2 at 1.  Deputy Brooks contacted Lozier's family members, who informed him that they not heard from Lozier in months.  *Id*.  The family further informed Deputy Brooks that during their last contact with Lozier, he had a "bad infection on his arm" and they had "taken him to a homeless shelter in Oklahoma City at his request."  *Id*.  They further noted that Lozier did not attend a recent funeral for his uncle, which was unusual.  *Id*.

Agent Jamerson also contacted Lozier's Public Defender, Kelly Middleman.  Dkt. No. 139-2 at 1.  Middleman also had not heard from Lozier in months.  *Id*.  Lozier currently has two bench warrants issued for failure to appear in court on two matters in which Middleton is representing him.  *Id*.  Middleman further stated that Lozier was "homeless and had no phone."  *Id*. at 2.

Contrary to Defendant's assertion, the Court does not agree that the Government was under a duty to keep tabs on Lozier for an extended period of time because of his "transient nature." Rather, the standard is that the Government must make reasonable effort to obtain Lozier's attendance at trial.  Nearly two months before trial, the Government began attempting to locate Lozier by contacting his family members and his attorney.  Lozier does not have an address, phone number, or other contact information, and the people in his life have not seen him in several

months.  Further, the Court notes that based upon his two pending bench warrants, it is likely that Lozier does not want to be located and is trying to ensure that he is not.

However, the Court notes that the Government has not followed up on an obvious lead. Lozier's family indicated that during their last interaction with Lozier, they dropped him off at a homeless shelter in Oklahoma City.  Dkt. No. 139-2 at 1.  The Court finds that it would be reasonable for the Government to contact this homeless shelter to determine whether Lozier is still there, or whether the homeless shelter has any information regarding Lozier's whereabouts or contact information.  Therefore, the Court reserves its ruling on the Government's Opposed Motion to Introduce William Lozier's State Preliminary Hearing Testimony Under Fed. R. Evid. 804 [Dkt. No. 139] until the Government supplements its motion regarding its efforts to contact the homeless shelter.

## CONCLUSION

IT IS THEREFORE ORDERED that:

- The Government's Motion to Introduce Evidence Under Fed. R. Evid. 609 [Dkt. No. 97] is GRANTED in part and DENIED in part.

- Defendant's objection to the Government's Notice of Intent to Introduce Evidence Under Federal Rule of Evidence 803(6) and 902(11) [Dkt. No. 98] is SUSTAINED.

- The Government's Opposed Notice and Motion to Introduce Evidence Under Fed. R. Evid. 404(b) is DENIED.

- The Government's Opposed Motion to Introduce Evidence of Defendant's Flight to the Mexican Border and Escape from Jail [Dkt. No. 103] is GRANTED.

- The Government's Opposed Motion to Introduce William Lozier's State Preliminary Hearing Testimony Under Fed. R. Evid. 804 [Dkt. No. 139] is reserved pending the Government's supplementation.

DATED this 28th day of March 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE