IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 21-CR-175-JFH |
| COKER DEAN BARKER, | |
| Defendant. | |

**OPINION AND ORDER**

During the jury trial of Defendant Coker Dean Barker ("Defendant"), a witness became unavailable. The question now before the Court is to what extent a previous statement by that witness may be introduced under Federal Rule of Evidence 804(b)(3). For the reasons stated herein, the Court determines that the previous statement is ADMISSIBLE.

**PROCEDURAL HISTORY AND BACKGROUND**

Defendant is charged with murder; use, carry, brandish, and discharge of a firearm in the course of a crime of violence; and causing the death of a person in the course of the use and carrying of a firearm. Dkt. No. 19. His jury trial began Monday, April 3, 2023 and is ongoing. *See* Dkt. No. 160; Dkt. No. 161; Dkt. No. 162.

The Government's case in chief included medical examiner testimony that the homicide victim, Mickel Kelough ("Kelough"), died from multiple causes of death: blunt force trauma, asphyxia, and firearm. Evidence put on by both parties indicates that at least three (3) people may have been involved in the homicide. For instance, a photograph allegedly taken shortly before the murder in Defendant's home was introduced which depicts three individuals: a slender male on the ground with clothing consistent with the clothing on Kelough's body at the time he was found dead, a larger male with a build consistent with Defendant on top of Kelough, and a partially

pictured individual who appears to be female. Testimony at trial indicated that the photograph was taken by yet another individual, as the angle from which the photograph was taken does not suggest it was possible to have been taken by any person depicted therein.[1] Kelough's body was found in the driver's seat of his car with a gunshot wound to the head. Kelough's brain matter was located spattered around the interior of his car and he had multiple internal injuries including eighteen (18) fractured ribs, some of which penetrated his lungs. An opened beer can was found in the center console of Kelough's car. Surveillance video evidence introduced into evidence depicts multiple individuals using a burn pile shortly after Kelough's body was found. Testimony from a witness who lived on the property where the burn pile was found identified Barker and his girlfriend, Little, as persons who arrived together in a brown vehicle and put things in the burn pile. Testimony revealed that remnants of various items likely from Defendant's home, which had Kelough's blood on them, were found in the burn pile. Evidence also suggests that another unidentified person may have arrived on the property where the burn pile was located. There is some suggestion that the characteristics of this person matched the description of Lanham.

Although multiple individuals appear to have been involved in the homicide, Defendant is the only individual currently on trial. His co-defendant Little , who is the step-daughter of Lanham, pled guilty to accessory after the fact to murder and is awaiting sentencing. Dkt. No. 88; Dkt. No. 89; Dkt. No. 90. There is no evidence in the record that a third person has been charged.

Defendant's opening statement in trial asserted that the third person involved in the homicide was Lanham. Both sides subpoenaed Lanham. On Wednesday, April 5, 2023, the

---

[1] The photograph was sent from a Facebook messenger account registered to Anastacia Little ("Little"), Barker's girlfriend. The photograph was sent to Lacrecia Yelloweyes ("Yelloweyes"), Little's mother. Yelloweyes is the wife of the unavailable witness, Scott William Lanham ("Lanham").

Government informed the Court outside the presence of the jury that it met with Lanham several times ahead of his anticipated testimony. During these various meetings, the Government informed Lanham of his right to counsel and provided Lanham with information on how to retain an attorney. The Government informed the Court that before that day, Lanham had not indicated interest in retaining counsel. However, during a lunchtime meeting on Wednesday, Lanham told the Government he wanted an attorney.

Still outside the presence of the jury, the Court brought Lanham into the courtroom, placed him under oath, and asked him if he was requesting court-appointed counsel. Lanham said that he was. The Court ordered the Federal Public Defender ("FPD") to provide counsel for Lanham.[2] The FPD met with Lanham Wednesday afternoon and then informed the Court that Lanham intended to exercise his Fifth Amendment right upon any questioning.

On Thursday morning, April 6, 2023, individuals found a handwritten note purportedly left by Lanham in a witness room at the courthouse. The note alludes to emotional distress and a potential intent to cause self-harm. Lanham's counsel brought the note to the attention of the Court, the Government, and Defendant. Though still under subpoena, Lanham was not located inside the courthouse. FBI agents began searching for him while presentation of Government evidence continued in Defendant's trial. Late Thursday afternoon, the Government confirmed that it no longer planned to call Lanham as a witness and informed the Court it did not intend to seek a material witness warrant. However, Lanham was also under a defense subpoena. Defendant moved for a bench warrant, which the Court entered Thursday evening. *See* Dkt. No. 164 (sealed).

On Friday morning, April 7, 2023, the parties informed the Court that there were search efforts ongoing for Lanham but that efforts so far had been unsuccessful. Defendant requested a

---

[2] The Court ordered this orally and memorialized it with a minute order. *See* Dkt. No. 163.

finding of unavailability under Federal Rule of Evidence 804, which the Government did not oppose, and the Court declared Lanham to be an unavailable witness. Defendant then informed the Court that he wished to introduce a prior statement made by Lanham as part of the defense case in chief. Defendant intended to introduce this statement through the testimony of Defendant's minor son ("MB"), who allegedly overheard Lanham make the statement to another individual who has since died. The Government objected. The Court held a hearing outside the presence of the jury Friday morning, where Defendant discussed a variety of exhibits that had not been provided to the Court or opposing counsel. The Court recessed the hearing for defense counsel to prepare an exhibit binder and meanwhile allowed the Government to continue its presentation of evidence. The Government rested its case Friday afternoon.

After the Government rested, the Court recessed the jury for the day and reconvened its hearing on Lanham's prior statement. At that time, Defendant provided the Court—but not the Government—with a binder of its hearing exhibits, including:

(1) a redacted grand jury transcript of MB from March 2023;

(2) Facebook records between Lanham, Little, and Little's mother;

(3) an affidavit from Defendant's investigator regarding attempts to locate and serve Lanham;

(4) a copy of the purported "suicide" note found in the courthouse witness room;

(5) a transcript of an FBI interview of Lanham from October 2022;

(6) jail notes attributed to Defendant purportedly discussing Lanham's involvement in the crime;

(7) an FBI interview report summarizing an interview of MB;

(8) a report from Defendant's investigator regarding an interview with an individual named Beau McNabb;

(9) an FBI polygraph request report for a polygraph examination of Lanham;

4

> (10) a report from Defendant's investigator regarding an interview with family members of Kelough;
>
> (11) attorney notes by defense counsel from a video conference with Oklahoma state legal counsel who represented Defendant in his pre-*McGirt* state case;
>
> (12) attorney notes by defense counsel from a June 2022 meeting with MB;
>
> (13) an FBI interview report summarizing an interview of an individual named Keanu Birdshead;
>
> (14) a flash drive of a March 2023 video interview by defense of Little; and
>
> (15) a DNA analysis report entered into evidence at trial during the Government's case in chief showing Lanham's DNA profile on a beer can found near Kelough's body.

Defense counsel labeled exhibits 8, 10, 11, 12, and 14 as "work product – privileged."[3] The Court recessed trial for the weekend and informed the parties it would issue an order on the admissibility of Lanham's previous statement ahead of Defendant's case in chief on Monday morning.

In 2019, a jail note purportedly written by Defendant stated in pertinent part:

> He owed me money paid half but couldn't pay other half cause he said he went to the casino and spent it my ol'Lady dad heard that and was mad and jumped in our bussiness [sic] my ol'Lady heard us came in there and we pretty much beat him to death all of us did.

Defense Hearing Exhibit 6.

---

[3] The Court notes that Defendant provided a 2" binder with more than 700 pages of material and a flash drive with an hour-long video interview as hearing exhibits. Many of these exhibits were designated as attorney work product and/or attorney-client privileged. The Court believes sufficient factual foundation and background were established by the exhibits summarized in this section, and it did not find it necessary to review any of the work product and/or privileged exhibits. Because these exhibits had no impact on the Court's evaluation or decision, the Court does not find it necessary to require Defendant to produce these exhibits to the Government. However, the Court does have some concern regarding the assertions of work product and privilege relating to the recorded interview of Little. Counsel shall confer over an appropriate production of the Little interview to the Government under the parties' reciprocal discovery obligation.

In February 2023, the Oklahoma State Bureau of Investigation issued a criminalistics examination report indicating that DNA from Lanham was identified on the mouth opening of a beer can located next to Kelough's body in the vehicle where Kelough was likely shot. Defense Hearing Exhibit 15.

In March 2023, MB testified before a grand jury regarding Lanham and said:

> Q. What do you specifically recall Scott Lanham saying to your grandmother?
>
> A. That he shot her and he was sorry, and it wasn't my dad.
>
> Q. That he shot her?
>
> A. Him. I'm sorry.
>
> Q. That he shot him?
>
> A. Sorry.
>
> Q. Is that what you said?
>
> A. Yes.

Defense Hearing Exhibit 1 at 19:18-20:2. The transcript indicates that MB overheard this conversation in 2019, shortly after Kelough died. According to defense counsel, the individual to whom Lanham was speaking—Defendant's mother and MB's grandmother, Billye Barker—died in 2021. The Government then asked when MB first told anyone about Lanham's statement and MB replied "Like, not too long ago . . . . Maybe like two or three months." *Id.* at 21:3-7. This time frame would be a gap of almost four (4) years between Lanham making the statement and MB reporting it.

## AUTHORITY AND ANALYSIS

A statement of an unavailable witness is not excluded by the rule against hearsay if it is

> a statement that a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or

6

> pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3).  Put more simply, "three prerequisites must be met to admit a hearsay statement in a criminal case that tends to expose a declarant to criminal liability:  (1) an unavailable declarant, (2) a statement against the declarant's penal interest, and (3) sufficient corroborating circumstances that clearly indicate the trustworthiness of the statement." *United States v. Lozado*, 776 F.3d 1119, 1122 (10th Cir. 2015) (citing Fed. R. Evid. 804; *United States v. Porter*, 881 F.2d 878, 882 (10th Cir. 1989)).  The Court examines each.

First, the declarant must be unavailable under the Federal Rules of Evidence.  "A declarant is unavailable as a witness if he or she  . . . refuses to testify . . . or is absent and the statement's proponent cannot procure the declarant's attendance."  *Id.*  There is no dispute that Lanham is unavailable.  He was subpoenaed by both parties and failed to appear.[4]  A bench warrant was issued.  Law enforcement efforts to serve that warrant have been unsuccessful.

Second, the statement must be against Lanham's penal interest.  The statement in question is that Lanham shot Kelough.  The medical examiner's report identifies "firearm" as one of the causes of Kelough's homicide.  This requirement is also clearly met.

Third, there must be sufficient corroborating circumstances that clearly indicate the trustworthiness of the statement.  The Court begins by noting the proper subject of inquiry here:  it must focus on corroborating circumstances regarding *Lanham*'s *making of the statement* and *not*

---

[4] While Lanham initially appeared, he left the courthouse after he was appointed counsel without being released and failed to return or make his whereabouts known, even to his counsel.  The Court has every reason to believe that Lanham's counsel advised him of his obligation to remain until being released and, further, made efforts to contact Lanham after he disappeared.

corroborating circumstances regarding *MB's reporting of the statement*. Indeed, the Court cannot consider MB's relationship with the Defendant or other matters related to MB's credibility, as the credibility determination of an in-court witness is a jury question. *See United States v. Manning*, 78 F. App'x 984, 988-89 (10th Cir. 2019) ("If the district court relied on Deatz's relationship to Manning as a factor against admitting the statements, that would be an obvious error. An in-court witness's credibility is a classic jury question. Any bias Deatz had because of her relationship with Manning should have been weighed by the jury.")[5]; *Lozado*, 776 F.3d at 1132 ("[I]t is the role of the jury—not the court—to assess the credibility of witness testimony." (quoting *United States v. Doyle*, 130 F.3d 523, 543 (2d Cir. 1997))).

"[T]he question under Rule 804(b)(3) is *always* whether the statement was *sufficiently* against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true, and this question can only be answered in light of all the surrounding circumstances." *United States v. Smalls*, 605 F.3d 765, 767 (10th Cir. 2010) (emphasis in original) (quotations omitted). "And Rule 804(b)(3)(B) sets up a high bar:  the corroborating evidence must '*clearly*' indicate trustworthiness." *Manning*, 787 F. App'x at 988 (emphasis in original). The statement's proponent carries the burden to demonstrate corroborating circumstances. *See id.*; *Lozado*, 776 F.3d at 1132.

The Tenth Circuit "has not 'squarely addressed how a statement must be corroborated,' [but has] held 'the declarant's credibility and the circumstances of the statement bearing on its truthfulness can both be considerations.'" *United States v. Hammers*, 942 F.3d 1001, 1011 (10th Cir. 2019) (quoting *Lozado*, 776 F.3d at 1132). "[T]he requirement of corroboration should be

---

[5] Unpublished decisions are not precedential but may be cited for persuasive value. *See* Tenth Circuit R. 32.1; Fed. R. App. P. 32.1.

construed in such a manner as to effectuate its purpose of circumventing fabrication." *Lozado*, 776 F.3d at 1132 (quoting Fed. R. Evid. 804 advisory committee notes).  Here, Defendant has met his burden of demonstrating the statement is sufficiently trustworthy in light of all the surrounding circumstances.  There is evidence that supports the fact that there was a third person present during events related to the homicide:  an unidentified person had to have taken the photograph depicting Defendant on top of Kelough shortly before his murder; and multiple people, including an unidentified person who purportedly matched the description of Lanham, were present at the burn pile.  Lanham had some association with Defendant, as he is the step-father of Defendant's girlfriend, Little.  Moreover, the presence of spattered brain matter in Kelough's car indicates that he was shot in the head while he was in the driver's seat.  The opening of the beer can found in the center console next to Kelough's body contained two sources of DNA.  The major contributing source matched Kelough's DNA; the minor contributing source matched Lanham's DNA.  The evidence directly associating Lanham with the location where Kelough was found shot in the head and circumstantially associating him with both the preceding assault and the later effort to dispose of evidence is sufficient corroboration under Rule 804(b)(3).

## CONCLUSION

Evidence that Lanham stated he, not Defendant, shot Mickel Kelough is ADMISSIBLE.

DATED this 8th day of April 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE